IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAR 28 2008

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | |
|---|---|
| The Inclusive Communities Project, Inc., | * |
| Plaintiff, | * |
| v. | * |
| | * |
| The Texas Department of | * |
| Housing and Community Affairs, and | * |
| Michael Gerber, | * |
| Leslie Bingham-Escareño, | * |
| Tomas Cardenas, | * |
| C. Kent Conine, | * |
| Dionicio Vidal (Sonny) Flores, | * |
| Juan Sanchez Muñoz, and | * |
| Gloria L. Ray in their official capacities, | * |
| Defendants. | * |
| | * |

**3:08 CV - 546 - D**

Civil Action No.

26522

## COMPLAINT

**Introduction**

1. The State of Texas admits that its Low Income Housing Tax Credit program

perpetuates racial segregation in Dallas and other large urban areas. The State admits that the

segregation is a result of prior and current funding decisions. The admission is set out in the

following statement.[1]

> The Department's funding allocations, as well as the allocations under the Bond
> Review Board's (BRB) Bond Program should promote racial integration,
> however, the continued failure of these entities to evaluate the implications of
> prior and current funding decisions permits the Department and the BRB to
> disproportionately allocate federal low income housing tax credit funds and the
> tax-exempt bond funds to developments located in impacted areas (above average

_____

[1] The "Department" referred to in the finding is the Texas Department of Housing and
Community Affairs. The state's distribution of the credits is governed by the Department's
Qualified Allocation Plan referred to as the QAP. The Bond Review Board is the State entity
charged with the operation of the State's Private Activity Bond program. These tax-exempt
bonds are often used in conjunction with Low Income Housing Tax Credits for affordable
housing development.

Complaint                                                                                    -1-

minority concentration and below average income levels).

Furthermore, QAP provisions requiring multiple notifications to state and local political officials and neighborhood organizations are feared to enable "Not-In-My-Backyard" (NIMBY) opposition to developments that are proposed in non-impacted areas (above average minority concentration and below average income levels).

The vast majority of low income housing tax credits and tax-exempt bonds that fund developments in the Dallas, Fort Worth, Austin and Houston metropolitan areas have been placed in impacted areas.

. . .

The Department's funding decisions arise directly out of the QAP. In recent years, the QAP has continued to place low income individuals in impacted areas, further adding to the concentration problem in most cities today. House Committee On Urban Affairs Texas House of Representatives, "Interim Report 2006 A Report to the House of Representatives 80[th] Texas Legislature", December 6, 2006, Robert Talton, Chairman, Findings page 48.

2. Despite this admission, the entity operating the State's Low Income Housing Tax Credit program, the Texas Department of Housing and Community Affairs ("TDHCA"), has not taken the actions necessary to remedy the segregation. Instead, TDHCA continues to perpetuate the concentration of TDHCA's Low Income Housing Tax Credit assisted housing in low-income minority areas.

3. The Inclusive Communities Project, Inc. ("ICP") is a Dallas based fair housing and civil rights organization. ICP focuses on the issue of racial segregation and policies and practices that operate to exclude low income families from higher opportunity, predominately White or non-minority  areas of the Dallas metropolitan area. The term "White" and the term "non-minority" are used in this complaint to refer to the 2000 U.S. Census category for persons of the White race who are also not Hispanic or Latino. In furtherance of ICP's mission, ICP assists Black or African American Dallas Housing Authority Section 8 families in finding housing

Complaint                                                                                                          -2-

opportunities in the suburban communities in the Dallas area. The assistance includes efforts to make units in Low Income Housing Tax Credit assisted properties available for ICP's clients. The Low Income Housing Tax Credit projects cannot refuse to rent to Section 8 tenants because the tenants are on the Section 8 voucher program. Texas Government Code 2306.269(b). TDHCA's failure to correct the disproportionate allocation of housing tax credits to low income minority areas directly interferes with ICP's ability to find housing for its clients in the higher opportunity, predominately White areas of the Dallas metropolitan area.

4. ICP seeks injunctive relief for defendants' segregation of Low Income Housing Tax Credit assisted developments into low income and minority concentrated locations in the Dallas metropolitan area.

**Jurisdiction**

5. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 3613(a).

**The Inclusive Communities Project, Inc - plaintiff.**

6. The plaintiff Inclusive Communities Project ("ICP") is a fair housing focused nonprofit organization which works with families seeking to obtain and retain housing in predominately non-minority areas of the Dallas metropolitan area. This is part of ICP's work to break down barriers to the creation of racially and economically inclusive communities. Specifically, ICP works with Black or African American families participating in the Section 8 Housing Choice Voucher program (the "Section 8 program") administered by the Dallas Housing Authority ("DHA"). ICP assists DHA Section 8 program families who choose to lease dwelling units in non-minority areas with counseling and financial assistance.  ICP's office is located in the City of Dallas, Dallas County, Texas.

Complaint                                                                                          -3-

**Defendants**

7. TDHCA is a corporate and political body established by the laws of the State of Texas. TDHCA is responsible for administering the federal Low Income Housing Tax Credit program in the state of Texas. The references to TDHCA in this complaint also include the actions of the Executive Director and the TDHCA board members in their official capacity.

8. Mr. Michael Gerber is the current Executive Director of TDHCA. Mr. Gerber is named as a defendant in this suit solely in his official capacity.

9. Ms. Leslie Bingham-Escareño, Mr. Tomas Cardenas, P.E., Mr. C. Kent Conine, Chair, Mr. Dionicio Vidal (Sonny) Flores, Dr. Juan Sanchez Muñoz, and Ms. Gloria L. Ray are the current members of the TDHCA Board. These individuals are named as defendants in this suit solely in their official capacity. The board members are responsible for adopting the Qualified Allocation Plan, setting TDHCA policy concerning the Low Income Housing Tax Credit program, and for making the decisions on which applications receive Low Income Housing Tax Credits.

**The Low Income Housing Tax Credit program.**

10. The Low Income Housing Tax Credit Program receives authority from the U.S. Treasury Department to provide tax credits to offset federal income taxes for investors in low income multifamily rental housing. The developers of the housing sell the credits to syndicators or investors. The sale of the tax credits provides the capital for the construction of the housing. The targeted beneficiaries of the program are very low and extremely low income families. The program was created in 1986 and is governed by the Internal Revenue Code, 26 U.S.C. § 42. While the amount of tax credits varies annually, Texas received an allocation of approximately

Complaint                                                                                                  -4-

$43 million in Low Income Housing Tax Credits in 2007. TDHCA approves approximately

6,000 to 7,000 additional units for Low Income Housing Tax Credits every year. TDHCA reports

that there were at least 127,000 units in its Low Income Housing Tax Credit inventory as of May

2007. TDHCA is the only entity in the state with the authority to allocate tax credits under this

program. TDHCA's procedures and standards for the allocation and distribution of the tax credits

are contained in TDHCA's annual Qualified Allocation Plan (QAP).

11. TDHCA's annual QAP contains a complex set of requirements for establishing

threshold eligibility and applying selection criteria to applications for housing tax credits. Under

Texas law TDHCA's final decisions allocating tax credits are made as an exercise of TDHCA's

discretion. TDHCA's discretion can take into account numerous factors not included in the

QAP's threshold eligibility or selection criteria. QAP 50.10(a). TDHCA's practice is to use its

discretion in making the housing tax credit allocation decisions.

**TDHCA uses race and ethnicity as one factor in its decision whether to award Low Income Housing Tax credits and this factor is a cause of the segregation and other discrimination.**

12. The objective circumstantial evidence shows that the pattern found by the House

Committee on Urban Affairs - TDHCA's placement of the vast majority of urban low income

housing tax credit housing in minority concentrated areas - is the result of TDHCA decisions

which take into account the race and ethnicity of the residents of the area in which the project is

to be located and which take into account the race and ethnicity of the probable residents of the

project.  Those decisions are made in a manner that causes racial and ethnic segregation in the

tax credit program in violation of the constitutional and statutory prohibitions against racial and

ethnic segregation.

Complaint                                                                                              -5-

13. The House Committee On Urban Affairs Texas House of Representatives found that TDHCA disproportionately allocated urban area Low Income Housing Tax Credit funds to developments located in minority concentrated areas. House Committee On Urban Affairs Texas House of Representatives, "Interim Report 2006 A Report to the House of Representatives 80[th] Texas Legislature", December 6, 2006, Robert Talton, Chairman, Findings page 48. The distribution of the existing TDHCA Low Income Housing Tax Credit project unit inventory is disproportionately concentrated in minority areas as compared to the distribution of all renter occupied housing.

14. Texas has a segregated LIHTC housing program according to a U.S. Department of Housing and Urban Development report. Over 60% of LIHTC units in Texas are in U.S. Census tracts where more than 50% of the population is minority according to the report. Only Connecticut, California, New Mexico, Washington, D.C., and Hawaii are listed in the report with higher percentages of LIHTC units in census tracts with 50% or greater minority population than Texas.  The state wide pattern is duplicated  in the Dallas area. The report states that in the Dallas PMSA, 65% of the LIHTC units are in 50% or greater minority census tracts. Office of Economic Affairs, U.S. Department of Housing and Urban Development, Office of Policy Development and Research, *"Updating the Low-Income Housing Tax Credit (LIHTC) Database Projects Placed in Service Through 2003,"* (2006) pages 76-78, 130.

15. Only 14.5% of TDHCA's Low Income Housing Tax Credit non-elderly units are located in 70% to 100% White census tracts throughout the State. Forty-eight percent, 48%, are located in 0% to 30% White Census tracts. The distribution of TDHCA's Low Income Housing Tax Credit project unit inventory in the City of Dallas and in Dallas County is more concentrated

Complaint                                                                                                          -6-

in minority areas than the state wide distribution and shows that race was at least one factor in the allocation of the tax credits.

16. While 19% of all renter occupied units in the City of Dallas are located in predominantly White 70% to 100% White census tracts, only 2.9% of TDHCA's Low Income Housing Tax Credit units in the City are in those 70% to 100% White census tracts. A corresponding disparate distribution is found in the City of Dallas minority concentrated census tracts. While only 51% of all renter occupied units in the City are in minority concentrated census tracts with a population of from 0% to 30% White, 85% of TDHCA's Low Income Housing Tax Credit units in the City are in those 0% to 30% White census tracts. While 14% of all renter occupied units in Dallas County are located in 70% to 100% White census tracts, only 2.8% of TDHCA's tax credit units in Dallas County are in 70% to 100% White census tracts. While only 38% of all renter occupied units in Dallas County are in 0% to 30% White census tracts, 71% of TDHCA's tax credit units in Dallas County are in 0% to 30% White census tracts.

17. TDHCA is less likely to deny tax credits for a project in a predominantly White area if the population eligible for and likely to reside in that project is disproportionately White. Rural areas with a predominantly White population and a predominantly White eligible population are one example of areas where TDHCA will approve housing tax credits for projects in White areas. There are 29 Low Income Housing Tax Credit family - non-elderly - projects with a total of 1,439 units for which TDHCA has racial and ethnic occupancy data and which are in 90% or greater White census tracts in the State. The population in these TDHCA Low Income Housing Tax Credit projects in 90% or greater White census tracts is only 8% Hispanic or Latino and 6% Black or African American according to the data in TDHCA's 2007 Housing Sponsor Report and

Complaint                                                                -7-

07-PropertyInventory Report. All but two of the projects and 409 of the units are in small towns with less than 30,000 population. The population in these small towns averages 88% White.

18. An example of TDHCA awarding Low Income Housing Tax Credits in a predominantly White area where minority residents are unlikely to use the tax credit supported units is the town of Vidor. TDHCA has approved two Low Income Housing Tax Credit projects in the all White town of Vidor, one in 1994 and another in 2006. Vidor has a 2000 U.S. Census population of 11,440. The 2000 Census reports eight Black or African Americans in Vidor. There are no Blacks or African Americans in the TDHCA Vidor LIHTC project that was approved in 1994. There is no occupancy reported for the project approved in 2006. The likelihood of many Black or African American families seeking occupancy at either of these Low Income Housing Tax Credit projects in Vidor is small given the modern history of opposition to Blacks living in Vidor's low income housing. Federal attempts to desegregate the public housing in Vidor during the 1990s were met with and defeated by overt racial hostility and resistance by the Ku Klux Klan. *State of Tex. v. Knights of Ku Klux Klan*, 58 F.3d 1075, 1077 (5th Cir. 1995).

19. Elderly projects are another example of TDHCA approving Low Income Housing Tax Credits for units in predominantly White areas for which the probable residents are also predominantly White. The state wide population occupying Low Income Housing Tax Credit units for elderly tenants in 90% or greater White census tracts is only 1% Hispanic or Latino and is less than 1% Black or African American according to the data in TDHCA's 2007 Housing Sponsor Report and other reports.

20. TDHCA disproportionately refuses to approve Low Income Housing Tax Credit funding for non-elderly projects in predominantly White census tracts compared to its approval

rate for predominantly White elderly projects in predominantly White census tracts. From 1999 through 2006, TDHCA awarded tax credits for approximately 67% of the elderly units in applications for 90% or greater White census tracts. TDHCA awarded tax credits for only 32% of the non-elderly units in applications for  90% or greater White census tracts during the same period.

21. TDHCA disproportionately refuses to approve Low Income Housing Tax Credit funding for non-elderly projects in predominantly White census tracts compared to its approval rate for non-elderly projects in minority census tracts. From 1999 through 2006 TDHCA awarded tax credits for only 32% of the Non-elderly units in all applications for 90% or greater White census tracts. During the same period, TDHCA awarded tax credits for approximately 47% of the non-elderly units in all applications for 0% to 10% White census tracts. Approximately 2% of all approved non-elderly units were in 90% or greater White census tracts. Approximately 27% of all approved non-elderly units were in 0 to 10% White census tracts.

22. The Low Income Housing Tax Credit projects are racially and ethnically segregated by occupancy characteristics as well as by location. The total population in the units in TDHCA's Low Income Housing Tax Credit projects located in 90% or greater White census tracts is only 5% Hispanic or Latino and 4% Black or African Americanly occupied according to the data in TDHCA's 2007 Housing Sponsor Report. The units in TDHCA's Low Income Housing Tax Credit projects in the non-White, 0 to 10% White, census tracts are 88% Black and Hispanic occupied - 40% Hispanic or Latino and 48% Black or African American - according to the data in TDHCA's 2007 Housing Sponsor Report.

23.  The facts concerning the geographical distribution and occupancy of TDHCA's Low

Income Housing Tax Credit projects as well as the results of the applications for the tax credits are based on TDHCA and other government reports. State law requires TDHCA to collect Fair Housing Sponsor Reports from the owners of the Low Income Housing Tax Credit assisted projects. Tex. Gov't. Code 2306.0624. However, the TDHCA reports are collected and maintained in a manner that inhibits and obstructs the accurate portrayal of the racial effects of TDHCA's decisions. TDHCA does not collect the information from all owners. Plaintiff has attempted to correct the information to the extent possible and practical.

**The use of race as a factor subjects minority tenants to slum and blighted conditions.**

24. TDHCA's use of race as a factor in its decisions to allocate Low Income Housing Tax Credits subjects the minority residents of those units in the City of Dallas to severe conditions of slum and blight. The Low Income Housing Tax Credit projects in the City of Dallas are located in minority neighborhoods with high crime and high poverty rates and that are blighted by industrial uses and obnoxious facilities such as illegal landfills. These neighborhoods are also subjected to unequal zoning and are already used for low-income housing as shown by the number of Section 8 Housing Choice Vouchers in those tracts.

25. There are 115 Low Income Housing Tax Credit projects listed in the TDHCA inventory in the City of Dallas. Thirty-two of the projects are located in tracts with heavy industrial zoning. Twenty-seven of the projects are located in tracts with other industrial zoning. Two Low Income Housing Tax Credit projects, the Villas of Sorrento at 3130 Stag Road and the Oakwood Place Apartments at 4950 Wadsworth are adjacent to the large illegal City demolition landfill known as the Curry site. There are five Low Income Housing Tax Credit projects within a half mile radius of the Deepwood Dump, the largest illegal dumpsite in the State of Texas.

Complaint                                                                                          -10-

26. Fifteen percent, 15%, of the Low Income Housing Tax Credit projects in the City of Dallas are in U.S. Census tracts with poverty rates equal to or greater than 40%. This is twice the national average of 7.6% of all Low Income Housing Tax Credit units that are located in 40% or greater poverty census tracts. Thirty-six of the Dallas Low Income Housing Tax Credit projects are in census tracts with poverty rates equal to or greater than 30%. The average poverty rate for the Dallas census tracts with Low Income Housing Tax Credit projects is 28.44%. The Dallas PMSA average poverty rate is 11%. The average median family income for the Dallas Low Income Housing Tax Credit census tracts is $29,641 which is 53% of the Dallas PMSA $55,854 median family income. Fifty-three of the housing tax credit projects in the City of Dallas are located in census tracts where the median family income is equal to half or less than half of the Dallas PMSA median family income. These low income and high poverty locations deny the Low Income Housing Tax Credit residents an equal opportunity for a safe environment, quality education, and adequate public and private services.

27. TDHCA's use of race as a factor in its decisions to award Low Income Housing Tax Credits denies safe housing to the Dallas residents of Low Income Housing Tax Credit units. The average violent 2004 crime rate by census tract for tracts with Low Income Housing Tax Credit projects was 137 crimes per 1,000 persons. The city-wide rate was 35 crimes per 1,000 persons. There were nine Low Income Housing Tax Credit projects in census tracts with violent crime rates greater than 200. There were 14 Low Income Housing Tax Credit projects in census tracts with violent crime rates greater than 100. There were 37 Low Income Housing Tax Credit projects in census tracts with crime rates higher than the City average.

28. TDHCA's use of race as a factor in its decisions to award Low Income Housing Tax

Credits causes the Low Income Housing Tax Credit affordable housing opportunities in the

Dallas area to be disproportionately located in the slum and blighted neighborhoods in the City of

Dallas. The Low Income Housing Tax Credit units in the City of Dallas are 79% of all Low

Income Housing Tax Credit units in Dallas County and 64% of all Low Income Housing Tax

Credit units in Collin, Dallas, and Denton counties.

**ICP Standing**.

29. ICP seeks to create and obtain affordable housing opportunities in non-minority

concentrated areas for persons eligible for low rent public housing and to provide the counseling

and other forms of assistance to Black families seeking to use their DHA Section 8 voucher to

move into low-poverty, non-minority concentrated areas throughout the Dallas metropolitan area.

ICP provides mobility counseling and mobility assistance to Black Section 8 families seeking

housing opportunities in non-minority concentrated and non-poverty concentrated parts of the

Dallas metropolitan area.

30. The counseling assistance provided by ICP to Black DHA Section 8 participants

includes pre-move family counseling and related financial assistance to assist the families who

want to make and sustain a desegregative housing move. The mobility assistance includes

negotiating with landlords as necessary to obtain units in the eligible areas at rents that are

affordable by the Section 8 families and eligible for the Section 8 subsidy. The financial

assistance provided to these families by ICP includes the payment of application fees, security

deposits and utility deposits to assist families moving into housing that provides desegregative

housing opportunities in non-minority, non-poverty concentrated areas, where such assistance is

necessary to make the desegregative move possible. ICP also makes landlord incentive bonus

payments to landlords who agree to participate in DHA's Section 8 program and provide

desegregative housing opportunities in non-minority, non-poverty concentrated areas when such

incentives are necessary to secure housing for the Section 8 families. Section 8 families may also

receive ICP assistance in the form of a contribution to their reasonable moving expenses in order

to make a move in an eligible area.

31. ICP's clients are Black or African American families participating in the DHA's

Section 8 Housing Choice Voucher Program.

32. The Low Income Housing Tax Credit units are important to ICP in its provision of

integrated housing opportunities for its clients. The Low Income Housing Tax Credit projects

cannot refuse to rent to an applicant based on the applicant's status as a Section 8 participant. A

large percentage of non-tax credit projects in White, high opportunity areas do refuse to rent to

Section 8 families. ICP's survey of 383 apartments in the predominantly White suburbs in the

Dallas metropolitan area found only 70 that would accept Section 8 families. Twenty-six of those

70 were tax credit projects.

33. The Low Income Housing Tax Credit projects that take DHA Section 8 voucher

participants are a significant source of units used in the DHA Section 8 program. However, the

large majority of those tax credit projects are currently segregated in minority areas in the City of

Dallas. The DHA March 2006 Section 8 occupancy report showed that:

A. 20% or 3,348 of the 16,190 DHA March 2006 Section 8 voucher households were in

Low Income Housing Tax Credit units.

B. Only 80 of the 3,348, 2%, were in 70% or more White census tracts.

C. Over 2,375 of the 3,348, 71%, were in 0 to 30% White tracts.

34. Since the Low Income Housing Tax Credit units cannot refuse to accept Section 8 and the units usually rent for amounts less than Section 8 maximum rents, it is possible for ICP to obtain these units for its clients using fewer person hours of assistance and at a lower out of pocket cost. But most of the Low Income Housing Tax Credit units are in minority areas and thus are not eligible for ICP's assistance. As a result, ICP must rely on the private market in the predominantly White areas. The private market in those areas is reluctant to accept Section 8 and does so only at a higher cost to ICP and its clients. The lack of Low Income Housing Tax Credit units in White areas injures ICP in its capacity providing assistance to minority clients seeking housing in those areas.

35. There is a higher probability that economic and racial integration can be achieved in Low Income Housing Tax Credit projects. Because the tax credit projects can also rent to higher income tenants who are not Section 8 participants, there is a higher probability of economic and racial integration than in traditional project based subsidy program units. Tax credit projects are thus more likely to offer ICP's clients a housing opportunity that is affordable and integrated. ICP can obtain tax credit units for its clients at a lower cost in ICP resources because the tax credit projects cannot discriminate against Section 8 and the rents are likely to be less than the maximum rents for the Section 8 program.

36. By denying financial assistance for units that would located in non-minority areas and thus making standard quality, non-luxury rental housing unavailable in non-minority areas, TDHCA's Low Income Housing Tax Credit decisions to award or deny the credits have directly and adversely affected ICP by:

A. reducing the number of units that ICP can use to help its clients find housing in non-

minority concentrated market areas,

B. increasing the amount of time per client that ICP must spend in order to help its clients find and retain modest rental housing in non-minority concentrated areas,

C. increasing the amount of financial assistance that ICP must spend because of the higher rents and other costs in the non-Low Income Housing Tax Credit units in order to help its clients find and retain modest rental housing in non-minority concentrated market areas, and

D. discouraging families with which ICP works from choosing dwelling units in market areas that offer racially integrated housing because of the cost factors involved in such a choice.

**Claims for relief.**

37. Defendants' actions make dwellings unavailable because of race, color, and national origin in violation of 42 U.S.C. § 3604(a).

38. Defendants' actions make financial assistance for constructing dwellings unavailable because of race, color, and national origin in violation of 42 U.S.C. § 3605(a).

39. Defendants' actions using race and ethnicity as one factor in their decisions concerning the allocation of Low Income Housing Tax Credits violates the 14th Amendment to the U.S. Constitution and is actionable under 42 U.S.C. § 1983.

40. Defendants' actions using race and ethnicity as one factor in their decisions concerning the allocation of Low Income Housing Tax Credits violates 42 U.S.C. § 1982 that requires the defendants to give all citizens of the United States the same right as is enjoyed by White citizens to, lease real property.

**Prayer for relief**.

Plaintiff requests the following relief:

A. Injunctive relief requiring defendants to allocate Low Income Housing Tax Credits in the Dallas metropolitan area in a manner that creates as many Low Income Housing Tax Credit assisted units in non-minority census tracts as exist in minority census tracts. This relief shall not also prohibit the approval of units in minority census tracts if:

(i) the defendants' approval rates for Low Income Housing Tax Credit units in minority census tracts in the Dallas metropolitan area does not exceed the approval rate for Low Income Housing Tax Credit units in non-minority census tracts, and

(ii) the approved projects in the minority census tracts do not contain a higher percentage of low income residents than the percentage of low income residents in the projects approved in the non-minority census tracts.

B. Injunctive relief enjoining the defendants from causing or perpetuating racial and ethnic segregation in the Low Income Housing Tax Credit program by denying Low Income Housing Tax Credits to units in the Dallas metropolitan area when such denial is made by taking the race and ethnicity of the residents of the area in which the project is to be located and the race and ethnicity of the probable residents of the project into account.

C. Injunctive relief enjoining the defendants from approving financial assistance in the form of Low Income Housing Tax Credits to applications in the Dallas metropolitan area unless the site and neighborhoods in which the units will be located meet the following conditions:

(i) The site and neighborhood must be suitable from the standpoint of facilitating and furthering full compliance with the applicable provisions of Title VI of the Civil Rights Act of 1964 and Title VIII of the Civil Rights Act of 1968.

(ii) The site must promote greater choice of housing opportunities and avoid undue

Complaint                                                                                                          -16-

concentration of assisted persons in areas containing a high proportion of low-income persons.

(iii) The site must be free from adverse environmental conditions, natural or manmade, such as instability, flooding, septic tank back-ups, sewage hazards or mudslides; harmful air pollution, smoke or dust; excessive noise, vehicular traffic, nearby industrial zoning and industrial uses, rodent or vermin infestation; or fire hazards. The neighborhood must not be one which is seriously detrimental to family life or in which substandard dwellings or other undesirable elements such as high crime rates predominate, unless there is actively in progress a concerted program to remedy the undesirable conditions and those conditions will be eliminated before the housing is occupied.

(iv) The housing must be accessible to social, recreational, educational, commercial, and health facilities and services, and other municipal facilities and services that are at least equivalent to those typically found in neighborhoods consisting largely of similar unassisted standard housing.

D. Injunctive relief prohibiting defendants from administering the Low Income Housing Tax Credit program in a manner that causes or perpetuates racial and ethnic segregation.

E. Injunctive relief requiring defendants to comply with and implement reporting and monitoring requirements, including those imposed by state law, that demonstrate compliance with the obligation to make Low Income Housing Tax Credit units available in a manner that does not perpetuate segregation and in a manner that reduces the probability of future violations.

F. an award of litigation expenses, attorney fees, and court costs, and

G. any other appropriate relief.

Respectfully Submitted,



Michael M. Daniel
State Bar No. 05360500
DANIEL & BESHARA, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Fax 214-741-3596
E-mail: daniel.michael@att.net
Attorney for Plaintiff

Laura B. Beshara
State Bar No. 02261750
DANIEL & BESHARA, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Fax 214-741-3596
E-mail: laurabeshara@swbell.net
Attorney for Plaintiff

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Inclusive Communities Project, Inc.

308 CV - 546 -

**DEFENDANTS**

The Texas Department of Housing and Community Affairs, Et.

**(b)** County of Residence of First Listed Plaintiff    Dallas
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Travis
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Daniel & Beshara, P.C.
3301 Elm Street Dallas, TX 75226 (214) 939-9230

Attorneys (If Known)

MAR 28 2008

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1  U.S. Government
  Plaintiff
- ☒ 3  Federal Question
  (U.S. Government Not a Party)
- ☐ 2  U.S. Government
  Defendant
- ☐ 4  Diversity
  (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☒ 230 Rent Lease & Ejectment | ☒ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 USC 3604, 3605. 42 USC 1983
Brief description of cause:
Claim of Racial discrimination in housing tax credit program

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) PENDING OR CLOSED** (See instructions):

JUDGE                    DOCKET NUMBER

DATE
March 28, 2008

SIGNATURE OF ATTORNEY OF RECORD
Michael M. Daniel

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE