IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE INCLUSIVE COMMUNITIES PROJECT, INC., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | Civil Action No. 3:08-CV-0546-D |
| THE TEXAS DEPARTMENT OF HOUSING AND COMMUNITY AFFAIRS, et al., | § § § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff The Inclusive Communities Project, Inc. ("ICP") moves for an award of $1,870,067.00 in attorney's fees and $24,392.00 in nontaxable costs. Defendants Texas Department of Housing and Community Affairs and its Executive Director and board members in their official capacities (collectively, "TDHCA") oppose the motion. For the reasons that follow, the court awards ICP attorney's fees in the sum of $1,869,577.00 and nontaxable costs in the sum of $24,392.00.

I

ICP's fee motion follows a bench trial in which ICP pursued claims that, in allocating Low Income Housing Tax Credits ("LIHTC") in the Dallas metropolitan area, TDHCA intentionally discriminated based on race, in violation of the Equal Protection Clause of the Fourteenth Amendment (actionable under 42 U.S.C. § 1983) and 42 U.S.C. § 1982, and that TDHCA's allocation decisions had a disparate racial impact, in violation of §§ 3604(a) and

3605(a) of the Fair Housing Act ("FHA").[1]  The court ruled in favor of ICP on its disparate impact claim under §§ 3604(a) and 3605(a) of the FHA, and against ICP on its intentional discrimination claims under the Equal Protection Clause and § 1982.  *See Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 860 F.Supp.2d 312, 313-14, 321 (N.D. Tex. 2012).

ICP moves under Fed. R. Civ. P. 54(d)(2)(C) and 42 U.S.C. § 3613(c)(2) for an award of attorney's fees and nontaxable costs.  It has reduced its fee requests by 664 hours (a 12% reduction from the lodestar), which it maintains are related to the unsuccessful discriminatory purpose claim.  ICP has also reduced the hours claimed based on eliminating time spent on intervenor Frazier Revitalization Inc.'s *amicus* brief and motion to intervene, possible duplication of effort, and other billing judgment reductions.  TDHCA argues that the requested fees should be reduced for three reasons: first, ICP had limited success in the lawsuit; second, certain billing entries are vague; and third, the hourly rates claimed by ICP's attorneys are unreasonable.

II

When a plaintiff prevails on a claim under §§ 3604(a) and 3605(a) of the FHA, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs."  42 U.S.C. § 3613(c)(2).

The determination of a fees award is a two-step process.

---

[1]The court assumes the parties' familiarity with its prior opinions in this case, and thus only sets out the facts necessary to understand this memorandum opinion and order.

> *Rutherford v. Harris Cnty.*, 197 F.3d 173, 192 (5th Cir. 1999).
> First the court calculates the "lodestar" which is equal to the
> number of hours reasonably expended multiplied by the
> prevailing hourly rate in the community for similar work. *Id.*
> The court should exclude all time that is excessive, duplicative,
> or inadequately documented. *Watkins v. Fordice*, 7 F.3d 453,
> 457 (5th Cir. 1993). Once the lodestar amount is calculated, the
> court can adjust it based on the twelve factors set forth in
> *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-
> 19 (5th Cir. 1974).[2]

*Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379-80 (5th Cir. 2010). The lodestar, however,

is presumptively reasonable and adequate to induce attorneys to undertake representation in

meritorious civil rights cases. *See Perdue v. Kenny A.*, ___ U.S. ___, 130 S. Ct. 1662, 1672-

73 (2010). The applicant bears the burden of substantiating both the requested hours and the

hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### III

TDHCA's principal ground for opposing ICP's fee application is that ICP achieved

limited success in this lawsuit by failing to prove intentional discrimination. TDHCA

maintains that, as with the court's decision to award ICP 50% of its taxable costs, the court

---

[2]The factors are: (1) the time and labor required for the litigation; (2) the novelty and
difficulty of the questions presented; (3) the skill required to perform the legal services
properly; (4) the preclusion of other employment by the attorney due to acceptance of the
case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations
imposed by the client or the circumstances; (8) the amount involved and the result obtained;
(9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the
case; (11) the nature and length of the professional relationship with the client; and (12)
awards in similar cases. *Johnson*, 488 F.2d at 717-19. The Supreme Court has "barred any
use" of the sixth factor. *Merrick v. Scott*, 2011 WL 1938188, at *1 n.3 (N.D. Tex. May 20,
2011) (Fitzwater, C.J.) (quoting *Rutherford*, 197 F.3d at 193).

should award 50% of the fees reasonably incurred, and it contends that ICP's 12% voluntary reduction is inadequate.

A

A plaintiff's degree of success is the most critical *Johnson* factor for determining reasonableness of the fee award. *See, e.g., Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 6789456, at *18 (N.D. Tex. Dec. 20, 2005) (Fitzwater, C.J.) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).  Determining fee reasonableness based on the degree of success depends initially on whether the plaintiff's claims for relief were related.  *See Hensley*, 461 U.S. at 434-45.  The court holds that ICP's claims of intentional discrimination and disparate impact involved a "common core of facts" and were based on "related legal theories."[3]  The court therefore focuses next on "the significance of the overall relief obtained by [ICP] in relation to the hours reasonably expended on the litigation."  *Id.* at 435.  When a plaintiff obtains "excellent results, [its] attorney[s] should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation[.]"  *Id.*  But where a plaintiff "achieve[s] only partial or limited success," granting full compensation may be excessive, and the court may reduce the attorney's fees award to account for the limited success.  *Id.* at 436.

---

[3]TDHCA does not contend that ICP's claims for relief were unrelated.

B

As a threshold matter, the court rejects the premise that its decision to award ICP 50% of its taxable costs affects the attorney's fees determination. This is because different standards apply. For attorney's fees, decisions like *Hensley* prescribe how the court, in its discretion, is to determine reasonableness. *See Hensley*, 461 U.S. at 435-36. A different standard regulates the court's discretion in awarding taxable costs. *Cf. Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1101 (5th Cir. 1982) ("[W]e know of no authority for a percentage reduction of either costs, properly defined, or expenses, recoverable as 'cost of suit,' based on the factors used by the district court to reduce attorneys' fees."), *overruled on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir 1986) (en banc); *see Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012) (holding that court's discretion under Rule 54(d) "is solely a power to decline to tax, as costs, the items enumerated in [28 U.S.C.] § 1920." (quoting *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987))). The court therefore declines to apply correspondingly its decision on taxable costs to its award of attorney's fees.

C

TDHCA maintains that ICP had only limited success because its intentional discrimination claim was unsuccessful. But when a plaintiff obtains "excellent results" compared to the relief sought, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. In cases seeking injunctive relief, courts consider the results "excellent" where the

- 5 -

plaintiff obtains "the bulk of the relief [it] sought." *Smith v. Tarrant Cnty. Coll. Dist.*, 2010 WL 4063226, at *6 (N.D. Tex. Oct. 13, 2010) (Means, J.) (holding that plaintiff obtained "excellent results" in action against college's restrictions on political activity, where "Plaintiffs obtained the bulk of the relief they sought, including a court order enjoining TCC from prohibiting Plaintiffs' protests on campus. While the Court did not accept each and every contention raised by Plaintiffs, the Court granted favorable relief to Plaintiffs based on the claims in support of which these contentions were raised."); *see also Barrow*, 2005 WL 6789456, at *18 (holding that "[f]rom a non-monetary standpoint, [plaintiff] clearly obtained excellent results" by establishing "that her constitutional right had been violated, that she had sustained actual damages as a result, and that [defendant] should be punished for his conduct through an award of punitive damages"). *Cf. Wesley v. Yellow Transp., Inc.*, 2010 WL 4629972, at *5-6 (N.D. Tex. Nov. 8, 2010) (Fitzwater, C.J.) (reducing attorney's fees request by 50% where requested amount exceeded six times plaintiffs' recovery, plaintiffs only prevailed on three (or fewer) of original twenty-four claims, and several plaintiffs represented by same attorneys were entirely unsuccessful).

Although ICP failed to prove intentional discrimination, and the court did not adopt all of ICP's objections to TDHCA's proposed remedial plan, the ultimate results of ICP's lawsuit were "excellent." ICP secured a remedy that addressed virtually every request in its complaint.[4] The following examples are illustrative. ICP sought injunctive relief requiring

---

[4]Not only did ICP secure a remedy that addressed virtually every request in its complaint, TDHCA has not suggested that ICP could have obtained any additional relief if

- 6 -

TDHCA to allocate LIHTC so that more such developments are located in non-minority census tracts.  *See* Compl. 16.  The remedial plan adopts an "Opportunity Index" to provide more incentives for LIHTC applicants to target "high opportunity areas" ("HOAs").  *See Inclusive Cmtys. Project v. Tex. Dep't of Housing & Cmty. Affairs*, 2012 WL 3201401, at \*4 (N.D. Tex. Aug. 7, 2012) ("*ICP IV*").  The plan institutes a tie-breaker that favors developments in HOAs.  *See id.*  ICP's complaint sought to enjoin TDHCA from approving LIHTC for areas with environmental concerns or high crime rates.  *See* Compl. 16-17.  The remedial plan "strengthen[s] the criteria for disqualifying proposed development sites that have undesirable features" and requires that applicants obtain preclearance from TDHCA if a proposed site "involves any negative site features . . . [at] or within 1000 feet of the proposed site."[5]  *ICP IV*, 2012 WL 3201401, at \*11.  The complaint also requested monitoring requirements, which the remedial plan includes.  *See* Compl. 17; *ICP IV*, 2012 WL 3201401, at \*12.  Because ICP obtained an excellent degree of success, the court

_____

it had successfully proved intentional discrimination.  Instead, TDHCA simply relies on its mistaken interpretation of *Hensley*, contending that ICP achieved limited success because some of its claims failed.  *Contra Hensley*, 461 U.S. at 435 (holding that when plaintiff obtains excellent results in lawsuit with related claims, "the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.").

[5]Although the court in adopting the remedial plan did not accept all of ICP's objections, including its objection that the preclearance requirement's bright-line distance rule is an inadequate measure of risk, the court need not have awarded ICP everything it requested to consider the results obtained "excellent."  *See, e.g., Smith*, 2010 WL 4063226, at \*1, 6 (concluding that some of plaintiffs' challenges to college's rules were non-justiciable, but finding results "excellent" because plaintiffs "obtained the bulk of the relief they sought").

declines to reduce the amount based on the eighth *Johnson* factor beyond the 12% reduction that ICP already voluntarily incorporated into its requested amount of attorney's fees.[6]

D

TDHCA objects that ICP is attempting to recover fees for a disparate impact claim that it did not plead, and that this warrants a reduction in the fee award.

First, TDHCA does not maintain that ICP's supposed failure to plead disparate impact is an independent ground for reducing the fee award. It instead relies on this argument as evidence that ICP's attorneys spent much of their time on the unsuccessful intentional discrimination claim. *See, e.g.,* Ds. Br. 6 ("Given that Plaintiff expressly pled this case only as a discriminatory 'purpose' suit, certainly *most* of the time spent in discovery related to the purposeful discrimination claim." (citation omitted)). But as the court has already explained, because ICP obtained excellent results, the court declines to further reduce the fee to account for hours expended on the unsuccessful claims.

Second, the court rejects the premise that ICP is attempting to recover fees on an unpleaded claim. The court recognized in an opinion filed almost one year before trial that ICP had brought a discriminatory impact claim under the FHA. *See Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 749 F.Supp.2d 486, 498 n.10 (N.D. Tex. 2010) (Fitzwater, C.J.) ("*ICP II*") ("The court addresses only ICP's discriminatory impact claim under the FHA."). And regardless whether ICP had adequately alleged this claim in its

---

[6]The court has considered the remaining *Johnson* factors and concludes that no further adjustment to the lodestar is warranted.

complaint, "[t]he joint pretrial order supersedes all pleadings and governs the issues and evidence to be presented at trial." *E.E.O.C. v. Serv. Temps, Inc.*, 2010 WL 5108733, at *3 (N.D. Tex. Dec. 9, 2010) (Fitzwater, C.J.) (citing *Quick Techs., Inc. v. Sage Grp., PLC*, 313 F.3d 338, 345-46 n.5 (5th Cir. 2002)), *aff'd*, 679 F.3d 323 (5th Cir. 2012). "'Once the [pretrial] order is entered, it controls the scope and course of the trial.'" *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 392-93 n.4 (5th Cir. 1998) (quoting Rule 16). It is apparent from the pretrial order that a disparate impact claim was at issue. Not only are the terms "disparate impact" and "discriminatory impact" used in the pretrial order, *see* PTO at 5, but the term "compelling governmental interest" is used as well, *id.* at 7-9. And as is clear from the court's ruling in *ICP II*, the burden of proving that TDHCA's actions were in furtherance of a compelling government interest relates directly to a disparate impact claim. *See ICP II*, 749 F.Supp.2d at 498 ("If ICP can establish a prima facie case in support of its FHA claim, the burden shifts to defendants to prove that TDHCA's actions furthered a compelling government interest.").

## IV

TDHCA maintains that ICP's attorneys' billing records contain hundreds of hours of vague entries that should not be compensated or, alternatively, should result in a 10% reduction in the fees requested.

## A

The party seeking reimbursement of attorney's fees meets its burden of establishing the number of hours expended by "presenting evidence that is adequate for the court to

determine what hours should be included in the reimbursement." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 2010 WL 3294248, at *2 (N.D. Tex. Aug. 20, 2010) (Fitzwater, C.J.) (quoting *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990)). "Exceptionally terse descriptions of activities do not constitute sufficient documentation." *Id.* (citing *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997)) (disallowing fees for "research and review of cases" because entry was impermissibly vague); *see also Cookston v. Freeman, Inc.*, 1999 WL 714760, at *2 (N.D. Tex. Sept. 14, 1999) (Fitzwater, J.) (collecting cases). "Litigants take their chances when submitting such fee applications, as they provide little information from which to determine the 'reasonableness' of the hours expended on tasks vaguely referred to as 'pleadings,' 'documents,' or 'correspondence' without stating what was done with greater precision." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995). Billing entries must explain the subject matter of the task enough to allow the court to determine whether the time was reasonably expended. *See Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, 2011 WL 487754, at *7 (N.D. Tex. Feb. 11, 2011) (Fitzwater, C.J.).

B

TDHCA identifies the time entries it challenges in only one sentence in its brief: "Here, Plaintiff's counsel's billing records include hundreds of hours of vague entries, such as 'preparation for trial,' Doc. 203 at 108, 'exhibit preparation,' Doc. 203 at 97, and block billing of 'analysis, research, drafting' for various pleadings, Doc. 203 at 94-95." Ds. Br. 9.

1

The time entries for "analysis, research, drafting," in the context of this case, are neither impermissible block billing nor fatally vague.

The term "block billing" refers to the disfavored "time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Fralick*, 2011 WL 487754, at *4 (citation omitted).  For example, a person engaging in block billing would record the total amount of time spent on a case that day, and then group several tasks under that single entry, leaving the court unable to determine how much time was devoted to a given task.  *See id.* at *5.  ICP's billing entries for "analysis, research, drafting" are not block billing because these tasks are sufficiently intertwined to be treated as one task.  *See* P. App. 94; *see also Fralick*, 2011 WL 487754, at *5 (holding that entries are not block-billed where "the task [has] a one-to-one correspondence with the number of hours reported for that day," such as "[attorney] expended 2.5 hours on 1/28/09 preparing exhibits to complaint and did nothing else on this case").

Neither are the entries "analysis, research, drafting" vague.  Each entry of "analysis, research, drafting" describes the subject matter of the task, such as "analysis, research, drafting response to [TDHCA] brief" or "analysis, research and drafting reply brief."  P. App. 94.  Including the subject matter of the task provides an explanation so that the court can determine whether the time was reasonably expended.  *See Fralick*, 2011 WL 487754, at *7 (comparing insufficient entry "Tel. confs. with DJones" with sufficient entry "Tel. conf. with

RHopp re joint status report"). The court declines to reduce any of the fees for billing entries designated as "analysis, research, drafting."

2

The billing entries for "exhibit preparation" are not vague because they offer some description of the subject matter and thus enable the court to determine whether the time was reasonably expended. The entries for "exhibit preparation" include a basic description of the exhibits, such as "exhibit preparation of new exhibits including exhibits to support remedy requested," "exhibit preparation of new exhibits," and "exhibit preparation and drafting exhibit list with complete names." P. App. 97. These entries are sufficient for the court to determine whether the time expended was reasonable.

3

The billing entries for "preparation for trial," however, are vague. Although these entries only appear on the days of trial, the court cannot determine what tasks ICP maintains were entailed in "preparation for trial," or whether the time expended was reasonable. *See* P. App. 108. Therefore, a reduction in the hours is warranted.

When the court determines that billing entries are vague, it can reduce the allowed time for the entries. *See Fralick*, 2011 WL 487754, at *7 (applying 10% reduction to vague entries). ICP's attorneys' records describe 14 hours expended by Laura B. Beshara, Esquire ("Beshara") as having been expended in "preparation for trial." Applying a 10% reduction and multiplying the reduced time by the hourly rate of $350 (which the court finds below is

- 12 -

reasonable), the court subtracts $490 from the fee award (1.4 hours x $350 = $490).[7]

V

The court next considers whether the requested hourly rates for ICP's attorneys are reasonable.

A

"The hourly rates to be used in the lodestar calculation are determined by 'the prevailing market rates in the relevant community.'" *Barrow*, 2005 WL 6789456, at *15 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). As the fee applicant, ICP "bears the burden of demonstrating 'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (quoting *Blum*, 465 U.S. at 895 n.11).

---

[7]Although there are similar examples to "preparation for trial" that can be found in the attorneys' time records, *see, e.g.,* P. App. 90 ("prepare for pretrial conference"), TDHCA does not challenge them in its one-sentence assertion. *See* Ds. Br. 9. If a party does not object to particular billing entries as inadequately documented, the court is not obliged *sua sponte* to sift through fee records searching for vague entries or block-billing. *See generally Kellstrom*, 50 F.3d at 325 (holding that district court erred in failing to conduct full analysis of billing records "[a]s to the specific items of which [opposing party] complains"). It is a common practice for courts to address only those potentially inadequate entries brought to the court's attention. *See, e.g., Barrow*, 2005 WL 6789456, at *12 ("examining the individual entries to which [the opposing party] objects"); *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 2009 WL 361956, at *4 (N.D. Tex. Feb. 13, 2009) (O'Connor, J.) (analyzing "specific entries identified by [opposing party]"), *vacated on other grounds*, 612 F.3d 800 (5th Cir. 2010); *Rabo Agrifinance, Inc. v. Veigel Farm Partners*, 2008 WL 3992060, at *4 (N.D. Tex. Aug. 20, 2008) (Robinson, J.) ("Defendants refer to only 7 billing entries that they contend are 'vague.' Of those entries referenced by the Defendants, the Court finds that the following billing entries are too vague[.]").

- 13 -

B

ICP requests $400 per hour for Michael M. Daniel, Esquire ("Daniel") and $350 per hour for Beshara.  As support for these rates, ICP relies on Daniel's declaration detailing his and Beshara's qualifications and experience.  Both have been civil rights attorneys since they graduated law school: Daniel in 1974 and Beshara in 1991.  Daniel's declaration lists numerous civil rights cases that they have litigated, including many concerning housing issues.  Based on these qualifications and experience, Daniel avers that the requested rates are reasonable.  And to show that the requested rates are within the appropriate range, ICP relies on cases from judges of this court addressing the reasonable rates paid to attorneys with similar qualifications and experience.  *See, e.g., Black v. SettlePou, P.C.*, 2012 WL 3638681, at *4 (N.D. Tex. Aug. 24, 2012) (Kinkeade, J.) (finding reasonable, in employment case, rates of $450 per hour for 10-year attorney and $375 per hour for 7-year attorney); *Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 2010 WL 3000877, at *5 (N.D. Tex. July 27, 2010) (Boyle, J.) (accepting as reasonable, in employment case, rates of $400 per hour for 12-year attorney, $500 per hour for 11-year attorney, and $750 per hour for 27-year attorney), *aff'd in part, rev'd in part*, 674 F.3d 448 (5th Cir. 2012), *cert. granted*, 2013 WL 203552 (U.S. Jan. 18, 2013) (No. 12-484); *see also* P. App. 122-30 (listing attorneys' years of practice).

TDHCA requests that the court decrease the requested rates by $50 each.  It objects that ICP has failed to submit affidavits from other attorneys practicing in the community, and that the examples of attorney's fees on which ICP relies are from unrelated cases.  The court concludes that ICP has satisfied its burden "to produce satisfactory evidence, in addition to

[its] attorney's affidavit, that the requested rates are in line with those prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cnty., Tex.*, 752 F.2d 1063, 1073 (5th Cir. 1985) (citing *Blum*, 465 U.S. at 895 n.11). Similar to the plaintiff in *Wheeler*, ICP submitted its attorney's declaration and directed the court's attention to fee awards in the relevant district court. *Compare id.* ("Wheeler submitted the affidavit of her attorney . . . . Wheeler further directed the court's attention to fee awards in the Southern District of Texas based upon hourly rates in line with those requested by her attorney.") *with Estrada v. City of El Paso, Tex.*, 500 F.Supp.2d 677, 679 (W.D. Tex. 2006) (adopting rate proposed by defendant because plaintiff "ha[d] not submitted any evidence other than her own counsel's declaration").

TDHCA also objects that the requested rates exceed the average and median rates for attorneys with similar years of experience in the Dallas area, according to the 2009 survey compiled by the State Bar of Texas. *See* Ds. Br. Exh. 1 at 11 (listing median rate as $286 per hour for Dallas attorney with over 25 years experience, and $287 per hour for one with 21 to 25 years experience). Although ICP's requested rates exceed the median for attorneys in the Dallas area, "[h]ere, rather than dealing with the 'median,' we have two attorneys with significant experience and ability." *Williams v. City of Balch Springs, Tex.*, 1999 WL 1146802, at *4 (N.D. Tex. Nov. 17, 1999) (Solis, J.). Both Daniel and Beshara have extensive experience in civil rights litigation, including many cases concerning housing discrimination. Moreover, "trial courts are considered experts as to the reasonableness of

- 15 -

attorney's fees[.]" *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *Wachovia Bank, Nat'l Ass'n v. Schlegel*, 2010 WL 4275277, at *2 n.4 (N.D. Tex. Oct. 29, 2010) (Fitzwater, C.J.) (same).  The court finds, based on its expertise in determining reasonable attorney's fees, that the hourly rates claimed for Daniel and Beshara are well within what is reasonable for attorneys of their experience and expertise.

TDHCA's arguments and evidence are insufficient to undermine the reasonableness of the requested rates for Daniel and Beshara.

VI

ICP moves for an award of $24,392.00 in nontaxable costs, which TDHCA does not contest.  These costs consist of $14,442.00 in fees and expenses that ICP paid to its expert witnesses whom TDHCA deposed, and $9,950 representing 50% of the fees and expenses incurred in obtaining the experts' initial opinions.  TDHCA does not challenge either of these requests, and the court grants ICP's motion in this respect.

\*     \*     \*

Accordingly, the court grants plaintiff's motion for attorney's fees and nontaxable costs in the amount of $1,869,577.00 in attorney's fees and $24,392.00 in nontaxable costs.

**SO ORDERED**.

February 15, 2013.

                                              SIDNEY A. FITZWATER
                                              CHIEF JUDGE

- 16 -