IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THE INCLUSIVE COMMUNITIES PROJECT, INC., § § § | |
| Plaintiff, § § | Civil Action No. 3:08-CV-0546-D |
| VS. § § | |
| THE TEXAS DEPARTMENT OF HOUSING AND COMMUNITY AFFAIRS, et al., § § § § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

In response to the court's August 11, 2015 order, the parties have submitted a September 10, 2015 joint status report that contains their proposals for how this case should proceed on remand. Having considered the joint status report and the decisions of the Supreme Court and the Fifth Circuit on appeal from this court's ruling, the court concludes that plaintiff's disparate impact claim should be decided on the current (or a supplemented) trial record, according to the procedure specified below.

I

When the Fifth Circuit remanded this case following the Supreme Court's affirmance, it stated that "we now remand this case to the United States District Court for the Northern District of Texas for further proceedings consistent with our opinion and the opinion of the Supreme Court." *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 795

F.3d 509, 510 (5th Cir. 2015) (per curiam).* The Fifth Circuit's opinion addressed "the correct legal standard to be applied in disparate impact claims under the [Fair Housing Act ("FHA")]." *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 747 F.3d 275, 276 (5th Cir. 2014), *aff'd and remanded*, ___ U.S. ___, 135 S.Ct. 2507 (2015). Reaching only that "one issue," *id.* at 280, the Fifth Circuit adopted the burden-shifting approach that had been recently promulgated by the U.S. Department of Housing and Urban Development ("HUD") in regulations concerning the burdens of proof in disparate impact housing discrimination cases, *id.* at 282. The panel remanded the case to this court "to apply this legal standard to the facts in the first instance." *Id.* at 283.

The Supreme Court in its opinion "[held] that disparate-impact claims are cognizable under the [FHA]." *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, ___ U.S. ___, 135 S.Ct. 2507, 2525 (2015). It affirmed the Fifth Circuit's judgment, and remanded the case "for further proceedings consistent with this opinion." *Id.* at 2526. Although the Court did not disturb the Fifth Circuit's adoption of the HUD burden-shifting regimen, after explaining its reasoning for concluding that disparate impact liability is available under the FHA, the Court discussed limitations on such liability, and it appeared

---

*Defendants contend that it is "the Supreme Court's opinion that controls, not the Fifth Circuit's opinion," Jt. Status Report 22, and that "ICP places too much emphasis on the opinion of the Fifth Circuit," *id.* Although the court does not intend in this procedural order to address this issue on the merits, it notes that the panel when remanding this case following the Supreme Court's affirmance directed that further proceedings be consistent not only with the Supreme Court's opinion but with the Fifth Circuit's opinion as well. *Inclusive Cmtys. Project*, 795 F.3d at 510.

to question whether such liability could be proved in this case.

The Court stated that "disparate-impact liability has always been properly limited in key respects that avoid the serious constitutional questions that might arise under the FHA, for instance, if such liability were imposed based solely on a showing of a statistical disparity," *id.* at 2522; that "[d]isparate-impact liability mandates the 'removal of artificial, arbitrary, and unnecessary barriers,' not the displacement of valid governmental policies," *id.* (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)); and that "[t]he FHA is not an instrument to force housing authorities to reorder their priorities [, but] aims to ensure that those priorities can be achieved without arbitrarily creating discriminatory effects or perpetuating segregation," *id.* The Court also observed that the limitations it was discussing on disparate-impact liability

> are also necessary to protect potential defendants against abusive disparate-impact claims. If the specter of disparate-impact litigation causes private developers to no longer construct or renovate housing units for low-income individuals, then the FHA would have undermined its own purpose as well as the free-market system. And as to governmental entities, they must not be prevented from achieving legitimate objectives, such as ensuring compliance with health and safety codes[.]
> Were standards for proceeding with disparate-impact suits not to incorporate at least the safeguards discussed here, then disparate-impact liability might displace valid governmental and private priorities, rather than solely removing artificial, arbitrary, and unnecessary barriers. And that, in turn, would set our Nation back in its quest to reduce the salience of race in our social and economic system.

*Id.* at 2524 (quoting *Griggs*, 401 U.S. at 431) (internal quotation marks, brackets, ellipsis, and

citation omitted).

After noting the importance and appropriateness of giving housing authorities and private developers leeway to state and explain the valid interest served by their policies (an analytical step that the Court deemed analogous to the business necessity standard under Title VII), which provides a defense to disparate-impact liability, *id.*, the Court then turned to the use of statistical evidence and the requirement that a plaintiff establish a *prima facie* case. It explained that "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity," *id.* at 2523; that "[a] robust causality requirement ensures that '[r]acial imbalance . . . does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create," *id.* (quoting *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 653 (1989), superseded by statute on other grounds, 42 U.S.C. § 2000e–2(k)) (alterations in original); that "[w]ithout adequate safeguards at the prima facie stage, disparate-impact liability might cause race to be used and considered in a pervasive way and 'would almost inexorably lead' governmental or private entities to use 'numerical quotas,' and serious constitutional questions then could arise," *id.*; that "[c]ourts must therefore examine with care whether a plaintiff has made out a prima facie case of disparate impact and prompt resolution of these cases is important," *id.*; that "[a] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact," *id.*; that "a plaintiff challenging the decision of a private developer to construct a new building in one location

rather than another will not easily be able to show this is a policy causing a disparate impact because such a one-time decision may not be a policy at all," *id.*; and that "[i]t may also be difficult to establish causation because of the multiple factors that go into investment decisions about where to construct or renovate housing units," *id.* at 2523-24.

Regarding this litigation specifically, the Court observed that, "[u]nlike the heartland of disparate-impact suits targeting artificial barriers to housing, the underlying dispute in this case involves a novel theory of liability," *id.* at 2522; that "[t]his case, on remand, may be seen simply as an attempt to second-guess which of two reasonable approaches a housing authority should follow in the sound exercise of its discretion in allocating tax credits for low-income housing," *id.*; and that "[f]rom the standpoint of determining advantage or disadvantage to racial minorities, it seems difficult to say as a general matter that a decision to build low-income housing in a blighted inner-city neighborhood instead of a suburb is discriminatory, or vice versa," *id.* at 2523. The Court specifically noted Judge Jones's specially concurring opinion in the Fifth Circuit, in which she observed that "if the ICP cannot show a causal connection between the Department's policy and a disparate impact—for instance, because federal law substantially limits the Department's discretion—that should result in dismissal of this case," *id.* at 2524.

As a result of the Fifth Circuit's decision adopting the HUD regulations, and the Supreme Court's affirmance (without altering the burden-shifting approach), the following proof regimen now applies to ICP's disparate impact claim under the FHA:

> We now adopt the burden-shifting approach found in 24 C.F.R. § 100.500 for claims of disparate impact under the FHA. *See* 24 C.F.R. § 100.500. First, a plaintiff must prove a prima facie case of discrimination by showing that a challenged practice causes a discriminatory effect, as defined by 24 C.F.R. § 100.500(a). 24 C.F.R. § 100.500(c)(1). If the plaintiff makes a prima facie case, the defendant must then prove "that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests . . . ." *Id.* § 100.500(c)(2). If the defendant meets its burden, the plaintiff must then show that the defendant's interests "could be served by another practice that has a less discriminatory effect." *Id.* § 100.500(c)(3).

*Inclusive Cmtys. Project*, 747 F.3d at 282. This court on remand must apply this legal standard to the facts in the first instance, but it need not "retry the case," and it retains the "sound discretion . . . to decide whether any additional proceedings are necessary or appropriate." *Id.* at 283.

II

The first key difference between the parties' proposals for litigating this case on remand is whether the court should revisit whether plaintiff The Inclusive Communities Project, Inc. ("ICP") has established a prima facie case of disparate impact. ICP maintains that the briefing should commence with defendants' addressing the second element (justification), followed by ICP's addressing the third element (less discriminatory alternative). It posits that the court should adhere to its summary judgment decision that ICP has established the first element (prima facie case).

Defendants Texas Department of Housing and Community Affairs and its Executive Director and board members in their official capacities (collectively, "TDHCA"), supported

by intervenor Frazier Revitalization Inc. ("Frazier"), contend the court should reconsider whether ICP has pleaded and proved a prima facie case. They maintain that TDHCA should not be required to address the justification prong unless ICP meets its obligation to plead and prove a prima facie case.

The court concludes that the interests of justice and fundamental fairness require that it first consider on the current (or a supplemented) trial record whether ICP has established a prima facie case. Although the court held in a pretrial ruling that ICP had established beyond peradventure a prima facie case of disparate impact and was entitled to partial summary judgment, *see Inclusive Communities Project, Inc. v. Texas Department of Housing & Community Affairs*, 749 F.Supp.2d 486, 499-500 (N.D. Tex. 2010) (Fitzwater, C.J.) ("*ICP II*"), *rev'd*, 747 F.3d 275 (5th Cir. 2014), *aff'd and remanded*, ___ U.S. ___, 135 S.Ct. 2507 (2015), it did so without the benefit of the Supreme Court's opinion. For example, in *ICP II* the court did not give the prima facie requirement the same emphasis that the Supreme Court has given it. The court stated that "ICP's prima facie burden is not a heavy one." *Id.* at 499. It explained that "ICP need only provide evidence that raises an inference of discrimination because 'we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). And while the court did not rely on evidence of statistical disparity alone, *see id.* at 499-500, the other sources that it cited themselves relied largely on statistical evidence, *see id.* at 500, and the court arguably did not analyze ICP's evidence through the prism of the "robust causality requirement" envisioned

by the Supreme Court.

Moreover, TDHCA did not have the benefit of the Supreme Court's decision, and, therefore, a pellucid sense of its importance in the equation of proving FHA disparate impact liability.  In *ICP II* the court observed that "defendants essentially do not contest ICP's prima facie cases," *id*. at 498, and it held that ICP had established a prima facie case of discrimination beyond peradventure based on evidence that was "uncontested," *id.* at 500. TDHCA should be permitted to challenge ICP's prima facie showing based on a clearer understanding of the requirements and consequences of ICP's establishing a prima facie case.

Accordingly, given the significant developments in this case on appeal, the court concludes that the interests of justice and fundamental fairness require not only that ICP's disparate impact claim be decided anew under the burden-shifting regimen adopted by HUD and the Fifth Circuit, but that the court start with whether ICP has established a prima facie case. *See* 24 C.F.R. § 100.500(c)(1).  The Fifth Circuit made clear that it was not requiring that this court "must retry the case," and that it was leaving "it to the sound discretion of [this] court to decide whether any additional proceedings are necessary or appropriate." *Inclusive Cmtys. Project*, 747 F.3d at 283.  The court concludes in its discretion that additional consideration of the prima facie case requirement is both necessary and appropriate.

III

Although both sides contend that the record should not be reopened, they advocate different approaches to how the case should be decided on the current record. Citing differences in the evidentiary burdens, allocations of proof, and standards of review for summary judgment rulings when compared to decisions following a trial, ICP maintains that the court should act as trier of fact. TDHCA posits that it should file a motion for summary judgment addressed to ICP's prima facie case, and, if ICP meets its burden, the remaining issues should be decided on summary judgment briefing.

The court concludes that it should decide this case on remand as trier of fact, not based (in whole or in part) on summary judgment motions or procedure. The salutary aspects of summary judgment procedure have largely fallen by the wayside in this case that has already been the subject of extensive proceedings (including a trial) in this court and on appeal to the Fifth Circuit and Supreme Court. The court agrees with ICP that there are key differences between summary judgment and trial proceedings that warrant the court's deciding this case as trier of fact, not based on summary judgment motions.

The court also concludes that the parties should be permitted to move to supplement the trial record. This is so because the court by its partial summary judgment ruling removed the prima facie element of the burden-shifting regimen from consideration at trial; the HUD burden-shifting regimen is materially different from the one the court applied originally; neither side had the benefit of the Supreme Court's guidance when it decided what evidence to present at trial; and the court is for the first time advising the parties that it will resolve this

case on a trial record rather than on trial and summary judgment records.

IV

The court therefore adopts the following procedure. Within 14 days of the date this memorandum opinion and order is filed, a party who wishes to supplement the trial record must move for this relief and propose a procedure and timetable for doing so. If such a motion is filed, responses and replies regarding that motion may be filed according to the deadlines prescribed by the local civil rules. If the parties agree to such a procedure, they may present an agreed procedural order for the court's consideration.

If a motion to supplement the trial record is not filed, the following deadlines will apply. Within 28 days of the date this memorandum opinion and order is filed, ICP must file a brief that cites the current trial record and demonstrates that ICP has proved a prima facie case of discrimination by showing that a challenged practice causes a discriminatory effect, as defined by 24 C.F.R. § 100.500(a). *See* 24 C.F.R. § 100.500(c)(1). TDHCA and Frazier may file response briefs no later than 28 days after ICP's brief is filed. ICP may file a reply brief to a response brief no later than 21 days after the response brief is filed.

If a motion to supplement the trial record is filed, no briefs concerning the merits of ICP's prima facie case will be due until the court decides the motion to supplement the trial record. The court will establish the briefing deadlines after deciding the motion to supplement the record.

If the court concludes after the first round of merits briefing that ICP has proved a prima facie case of discrimination, it will then establish a briefing schedule under which

TDHCA (supported by Frazier's separate brief, if it so desires) will be required to prove, based on the current (or supplemented) trial record, that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests.  *See* 24 C.F.R. § 100.500(c)(2).  ICP will be permitted to file a response brief that challenges defendants' asserted substantial, legitimate, nondiscriminatory interests and shows, based on the current (or supplemented) trial record,  that the defendants' interests could be served by another practice that has a less discriminatory effect.  *See* 24 C.F.R. § 100.500(c)(3).  Defendants (supported by Frazier's separate brief, if it so desires) will be permitted to file a combined reply in support of the second factor (justification) and response to ICP's brief on the third factor (less discriminatory alternative).  ICP will be permitted to file a surreply in support of its position on the third factor (less discriminatory alternative).  The court will set deadlines for each permitted filing.

**SO ORDERED**.

October 8, 2015.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE